IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ALONZO ECHOLS**
      **Plaintiff,**

      v.                                        Case No.  04-2484 JWL

**UNIFIED GOVERNMENT OF**
**WYANDOTTE COUNTY, KANSAS CITY,**
**KANSAS.**
      **Defendant.**

_____

## MEMORANDUM AND ORDER

This case concerns a successful false imprisonment claim by Mr. Echols against the the Unified Government of Wyandotte County, Kansas City, Kansas ("the Unified Government") for the admitted wrongful detention of Mr. Echols in jail for 25 days in October 2003.  Following a trial in December 2005 in which the Unified Government admitted liability, a jury awarded Mr. Echols compensatory damages of $500,000.  This matter comes before the court on The Unified Government's motion for a new trial or remittitur.  For the reasons explained below, the motion is denied.

## **BACKGROUND**

The parties engaged in a two-day jury trial solely on the issue of damages. The jury deliberated and returned a verdict in favor of Mr. Echols for $500,000. The Unified Government appeals this award and urges the court to grant either a new trial or remittitur.

The facts of the case span several years based on two separate incidents in which the Kansas City, Kansas police wrongfully detained Mr. Echols based on mistaken identity. The second incident formed the basis for the jury verdict at issue in this motion. Although facts within the incident were in dispute, both sides agreed on the general factual background. Despite his protestations to the authorities that they had improperly detained him for the second time on the same mistake, agents of the Unified Government detained Mr. Echols in the Wyandotte County Detention Center ("WCDC") for roughly 25 days in October and November 2003.

The underlying mistake, however, began in February 2000, when Kansas City, Kansas, police officers executed five bench warrants for misdemeanors and a state felony warrant for aggravated battery against Mr. Echols, who was born February 4, 1965. He was arrested because his name and birth date mistakenly were listed on the warrants. The warrants instead should have been issued for Alonzo Eacholes, a suspect with a very similar name who was born August 1, 1973. The two men, Mr. Echols and Mr. Eacholes, have no similar characteristics beyond their names.

Nonetheless, the police took Mr. Echols to the Wyandotte County Detention Center ("WCDC") in 2000 and booked him on the warrants. He maintained his innocence but remained in jail for 18 days until March 8, 2000, when the district court dismissed the felony charge and released him. Mr. Echols later received a $25,000 settlement based on a civil lawsuit he filed against the Unified Government following his 2000 false imprisonment.

The confusion arose again on the afternoon of October 20, 2003, when Kansas City, Kansas police officers responded to an unrelated domestic disturbance call involving Mr. Echols. The officers arrested him for domestic battery and then discovered that entering his name into the ALERT system resulted in five outstanding bench warrants. He was taken to the WCDC and booked on these outstanding warrants.

The next day, on October 21, 2003, Mr. Echols appeared before a Kansas City, Kansas, municipal court judge. The basis for the Unified Government's motion for a new trial centers on the events during this phase of the proceedings. Mr. Echols claims that he was told he was not permitted to post bail, while the Unified Government alleges that Mr. Echols knew that he could post bail for $300. In addition, Nancy Roe, Mr. Echols's former attorney, testified that Mr. Echols might not have heard the instructions regarding his ability to post bail. Also, Mr. Echols testified that even if the Unified Government's claim were true, he did not have $300 in his possession while in custody.

In any event, he did not post bail and his trial was scheduled for November 13, 2003. Mr. Echols returned to confinement awaiting his trial. On November 13, 2003, after roughly

25 days in custody, Mr. Echols appeared before a municipal court judge on the five tickets. After realizing that Mr. Eacholes was in fact the proper defendant, the judge immediately ordered the release of Mr. Echols.

At the December 2005 jury trial at issue here, Mr. Echols testified regarding the pain and suffering he experienced while being wrongfully detained for the second time by the Unified Government, and counsel for the Unified Government thoroughly cross-examined him regarding his alleged damages. The Unified Government primarily argued that Mr. Echols did not make a reasonable attempt to either post bail or alert his captors of their mistaken identity. Mr. Echols, however, disputed this claim and insisted that the Unified Government intentionally targeted him in retaliation for the earlier $25,000 settlement he received.

## STANDARD OF REVIEW

Fed. R. Civ. Pro. 59(a) allows the court to grant a new trial on all or part of the issues "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." *Id*. Unfortunately, though, the court faces an irreconcilable conflict in the Tenth Circuit's guidance on the standard of review in deciding a motion for a new trial where jurisdiction is based on diversity of citizenship. In one line of cases, the Tenth Circuit directs that the court should apply a wholly federal law standard. *See, e.g.*, *Woolard v. JLG Industries, Inc*., 210 F.3d 1158, 1168 (10th Cir. 2000) ("Federal law governs the decision whether a remittitur should be granted in a diversity case. 'Under federal law,

whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard.'") (quoting *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1162 (10th Cir. 1985)); *see also Blanke v. Alexander*, 152 F.3d 1224, 1235 (10th Cir. 1998) (same). That line of cases, however, directly contradicts the standard offered by an entirely separate line of cases. *See, e.g.*, *Century 21 Real Estate Corp. v. Meraj Intern. Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) ("In a diversity case, as here, state law provides the appropriate rules of decision for the district court to determine whether the verdict was excessive.") (citing *Gasperini v. Center for the Humanities*, 518 U.S. 415, 425 (1996)); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1251 (10th Cir. 2000)). This inconsistency is not simply an instance where the Tenth Circuit has changed its position to comply with a new Supreme Court standard; on the contrary, the conflicting decisions do not even reference each other.         Comparing federal and state law, however, the court concludes that it need not resolve the above inconsistency to decide the motion here. Under federal law, "[w]here a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Snyder v. City of Moab*, 354 F.3d 1179, 1187-88 (10th Cir. 2003) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)). "The court considers the evidence in the light most favorable to the prevailing party,[1] bearing in mind

---

[1] To the extent the Unified Government challenges whether the court should view the facts in the light most favorable to Mr. Echols, the court finds no merit to the challenge. The

that '[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" *Id*. at 1188 (internal citation omitted) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1226 (10th Cir. 2000)). Further, as the appellant, the Unified Government "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (internal quotations and citation omitted). Thus, "absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Id*. *See also Simek v. J.P. King Auction Co.*, slip copy, 2005 WL 3320563, *10 (10th Cir. Dec. 8, 2005) (same).

Similarly, under Kansas law, "[w]here a charge of excessive verdict is based on passion or prejudice of the jury but is supported solely by the size of the verdict, the trial court will not be reversed for not ordering a new trial, and no remittitur will be ordered, unless the amount of the verdict in light of the evidence shocks the conscience of the appellate court." *Gregory v. Carey*, 246 Kan. 504, 515 (1990) (citing *Smelko v. Brinton*,

---

Tenth Circuit's precedent clearly dictates this standard, as is confirmed, for example, in *Snyder v. City of Moab*, 354 F.3d 1179, 1187-88 (10th Cir. 2003), as well as *Hampton v. Dillard Dept. Stores, Inc*., 247 F.3d 1091, 1114-15 (10th Cir. 2001).

241 Kan. 763, 771 (1987)).  *See also Dougan v. Rossville Drainage Dist*., 270 Kan. 468, 485-486 (2000) (same); *Taiwo v. Vu*, 249 Kan. 585, 596-98 (1991) (same).  In cases such as this, "'[a]n appellate court should be cautious when requested to substitute its judgment for that of the trier of fact that heard the case.'" *Id.* (quoting *McGuire v. Sifers*, 235 Kan. 368, 373, (1984)).  Likewise, "'[w]hen a verdict is attacked on the ground that it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses.  If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the successful party, will support the verdict, this court should not intervene.'"  *Cott v. Peppermint Twist Management Co., Inc*., 253 Kan. 452, 460 (1993) (citation omitted).

At bottom, therefore, the distinction between federal and state law is largely semantic.  Whether the court applies federal or state law, the standard–and the result–is the same: the Unified Government's motion for a new trial or remittitur is warranted only if the jury's verdict shocks the court's judicial conscience.

## **ANALYSIS**

In arguing that the damages awarded should shock the court's judicial conscience, the Unified Government makes two arguments.  First, it alleges that Mr. Echols failed to mitigate his damages because he could have posted bail for merely $300.  Second, it alleges that the amount of the jury's verdict lacks a reasonable relationship to Mr. Echols's actual damages.  The court will address both arguments in turn.

**1.     The Alleged Ability to Post Bail for $300**

That Mr. Echols could have posted bail for $300 is a factual contention that turns on the credibility assigned to competing witness testimony. Each side offered a conflicting account regarding both Mr. Echols's state of mind and his financial ability to post bail during his October 2003 incarceration. Although the Unified Government offered the testimony of Judge Maurice Ryan to establish that bail was set at $300, Mr. Echols offered his own testimony, as well as that of attorney Nancy Roe. He testified that not only was he unaware that Judge Ryan allowed him to post bail at $300, but also that it was irrelevant at that amount because he did not have $300 in his possession while in custody. Further, he testified that he did not trust any of his friends or family to bring him money he had stored elsewhere. Thus, from his perspective, there was simply no way he could post bail, regardless of the amount.

The jury heard both sides, and it obviously accepted the version of the facts advanced by Mr. Echols. This was a factual dispute, which is entirely within the jury's province to decide. The Unified Government cited no support for its assertion that this court may second-guess a jury's credibility and factual findings. Repeatedly, in fact, the Tenth Circuit has rejected the Unified Government's contention on this point: "Thus, the jury was presented with conflicting testimony regarding certain events and the motivations. . . . In such a case, it is the jury's prerogative to weigh the credibility of the witnesses. . . . 'The very essence of its function is to select among conflicting inferences and conclusions

that which it considers most reasonable. . . . That conclusion . . . cannot be ignored.'" *Klein v. Grynberg*, 44 F.3d 1497, 1503-04 (10th Cir. 1995) (quoting *Tennant v. Peoria & Pekin Union Railroad*, 321 U.S. 29, 35 (1944)). *See also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) ("The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."). It is hornbook law that "[a] trial judge should not order a remittitur or a new trial when the size of the verdict turns upon conflicting evidence and the credibility of witnesses." *Palmer v. City of Monticello*, 31 F.3d 1499, 1508 (10th Cir. 1994). Thus, the Unified Government's first basis for a new trial or remittitur fails.

**2.    The Reasonable Relationship Between the Damages Awarded and Mr. Echols's Actual Damages**

Mr. Echols alleged actual damages for his false imprisonment based, in part, on mental pain and suffering, humiliation, and loss of freedom and liberty. He testified at length directly to this issue, and the Unified Government exhaustively cross-examined him. The jury, therefore, had a substantial record from which to formulate its verdict. The Unified Government, though, attacks the jury's damages award as not bearing a reasonable relationship to the injury Mr. Echols suffered.

Once again, however, the Unified Government fails to support its assertion with any case law from either the Tenth Circuit or the Kansas Supreme Court. Moreover, it

advances no argument other than alleging that Mr. Echols had few friends and family, and that his income at the time was exceptionally low. Based on this, it contends, he could not have agonized during his 25-day false imprisonment.

Attempting to vacate Mr. Echols's damages based on that basis, however, is entirely unfounded. His pain and suffering was not less intense simply because he earned little money and had few friends. He testified that he was constantly terrified during his 25-day wrongful detention in jail. The jury was entitled to evaluate the level of his damages based on his testimony and his cross-examination by the Unified Government. Because there is substantial testimony in the record on the issue, "[t]he court may not reweigh the evidence or substitute its own judgment for the jury's. If there is evidence upon which the jury could have properly relied in reaching its verdict, that verdict must stand." *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995) (internal citation omitted). *See also Schneider v. City and County of Denver*, 47 Fed. Appx. 517, 530, 2002 WL 1938583, *11 (10th Cir. 2002) ("[T]he jury had the opportunity to observe Mr. [Echols] and the other witnesses and to credit or discredit their testimony regarding [his] alleged mental anguish. Under such circumstances, we cannot say the jury's decision to compensate [him] for his alleged mental anguish either shocks the judicial conscience or raises an inference of passion or prejudice."); *Sheets v. Salt Lake County*, 45 F.3d 1383, 1390-91 (10th Cir. 1995) (refusing to vacate a damages award of $650,000 on an invasion of privacy claim involving the disclosure of "not particularly controversial or embarrassing" information because the issue was "a legitimate question for the jury").

Courts routinely refuse to second-guess a jury's determination of actual damages for pain and suffering precisely because there is no decision calculus enabling the court to audit the jury's award. Indeed, "[u]nlike special damages, such as medical expenses and loss of earnings, which require specific proof, general damages for pain and suffering, such as those present here, are not susceptible to proof by a set dollar amount." *Blanke v. Alexander*, 152 F.3d 1224, 1235-37 (10th Cir. 1998) (citing *Williams v. Missouri Pacific Railroad Co.*, 11 F.3d 132, 135 (10th Cir.1993)). *See also Goico v. Boeing Co.*, 358 F. Supp. 2d 1028, 1030-31 (D. Kan. 2005) (collecting cases); *Brayman v. 99 West, Inc.*, 116 F. Supp. 2d 225, 231 (D. Mass. 2000) (collecting cases).

As Mr. Echols points out, the Unified Government's challenge is decimated if the court applies long-established Kansas law:

> Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. All things considered, we are unable to say from the record before us that this verdict is excessive.

*Domann v. Pence*, 183 Kan. 135, 141 (1958).

In the above case, *Domann*, the Kansas Supreme Court also refused to set aside the damages for pain and suffering because the defendant failed to show any "specific facts and circumstances inferring passion, prejudice or bias on the part of the jury." *Id.* That is the

11

case here, as the Unified Government does not specifically point to anything in the record that supports its allegations that the jury ignored its instructions or otherwise acted on passion or prejudice. Without any specific allegation, there is no basis for this court to grant its motion. Mr. Echols's counsel relied on reason rather than emotion, and the Unified Government offers no basis for this court to grant its motion for a new trial.

**3.     Conclusion**

There is substantial testimony in the record from which the jury made its decision. The court may not order a new trial or reduce the damages awarded by imposing its own estimate of the actual damages Mr. Echols suffered. The Unified Government failed to offer any support in the facts or in anything which occurred at trial for its claim that the jury was moved by passion or prejudice against it, nor does the court find that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Snyder*, 354 F.3d at 1188. As a result, the Unified Government's motion for a new trial fails because the damages awarded to Mr. Echols do not shock the judicial conscience of the court.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion for a new trial or remittitur (doc. 92) is denied.

**IT IS SO ORDERED** this 19th day of January, 2006

12

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

13